# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DECHRA LIMITED and DECHRA VETERINARY PRODUCTS LLC,

Plaintiffs,

v.

RACEHORSEMEDS.COM

Defendant.

Civil Action No. 15-cv-9143-CM-GLR

**MEMORANDUM OF LAW IN SUPPORT OF DECHRA'S MOTION FOR PERMISSION TO SERVE DEFENDANT RACEHORSEMEDS.COM BY ALTERNATIVE MEANS**

**TABLE OF CONTENTS**

STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT ........................ 1
STATEMENT OF THE QUESTION PRESENTED ..................................................................... 1
STATEMENT OF THE RELEVANT FACTS AND ARGUMENT ............................................ 1
CONCLUSION ........................................................................................................................ 6

# TABLE OF AUTHORITIES

**Cases**

*Craigslist, Inc. v. Troopal Strategies, Inc.*,
No. 09-4741, 2010 U.S. Dist. LEXIS 144409 (N.D.C.A. Nov. 24, 2010) ................................ 2
*Elcometer, Inc. v. TQC-USA, Inc.*,
No. 12-14628, 2013 U.S. Dist. LEXIS 19874 (E.D. Mich. Feb. 14, 2013)............................... 2
*Facebook, Inc. v. Banana Ads, LLC*,
No. 11-3619, 2012 U.S. Dist. LEXIS 42160 (N.D.C.A. Mar. 27, 2012).................................. 2
*Joe Hand Promotions, Inc. v. Carrette*,
No. 12-2633, 2013 U.S. Dist. LEXIS 109731 (D. Kan. July 9, 2013) ...................................... 2
*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)................................................................................................................ 2
*Rosenthal v. Christiana Bank & Trust Co.*,
No. 12-623, 2012 U.S. Dist. LEXIS 136391 (D. Del. Sept. 24, 2012)...................................... 2
*The North Face Apparel Corp., et al. v. Fujian Sharing Imp. & Exp. Ltd. Co., et al.*,
Case No. 1:10-CV-01630, Dkt. No. 15 (S.D.N.Y. Mar. 2, 2010) ............................................ 2
*United Health Servs. v. Meyer*,
No. 12-6197, 2013 U.S. Dist. LEXIS 31892 (N.D. Cal. Mar. 6, 2013)..................................... 2

**Statutes**

15 U.S.C. § 1051........................................................................................................................ 4

**Other Authorities**

4 C. Wright & A. Miller, *Fed. Practice & Procedure* § 1061 (2d ed. 1987) ................................ 1

**Rules**

Fed. R. Civ. P. 4...................................................................................................................... 1, 2

## STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs Dechra Limited and Dechra Veterinary Products LLC (collectively "Dechra"), by and through their undersigned counsel, hereby move the Court for an order granting permission to serve Defendant Racehorsemeds.com ("RHM") the Complaint and Summons in the above-captioned litigation by alternative means – namely by email to RHM's well-publicized and frequently used email address "info@racehorsemeds.com." Dechra also seeks a 30-day extension of its deadline to serve the Complaint and Summons pursuant to Fed. R. Civ. P. 4.[1]

As explained below, RHM has gone to great lengths to conceal its true identity and corporate location, making it impossible for Dechra to know at this early stage what RHM's true and actual physical address is, and who is ultimately operating RHM and its website. Thus, despite diligent efforts, Dechra has been unable to effect service to date.

## STATEMENT OF THE QUESTION PRESENTED

Whether good cause exists for an order granting Dechra permission to effect service on RHM by email means on or before the requested date of November 27, 2015.

## STATEMENT OF THE RELEVANT FACTS AND ARGUMENT

The objective of Federal Rule of Civil Procedure 4 is to provide more flexibility in the procedures for giving defendants notice of an action, while eliminating unnecessary technicalities in the rules for service of process. *See*, *e.g.*, 4 C. Wright & A. Miller, *Fed. Practice & Procedure* § 1061, at 216 (2d ed. 1987). Due process requires that any service of notice be "reasonably calculated, under all circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also United Health Servs. v.*

[1] Service of the Complaint and Summons is currently due no later than October 27, 2015. Dechra seeks an extension to effect service no later than November 27, 2015

*Meyer*, No. 12-6197, 2013 U.S. Dist. LEXIS 31892, at *1-2 (N.D. Cal. Mar. 6, 2013) (noting that Rule 4 works to "eliminate unnecessary technicality in connection with the service of process"); *Rosenthal v. Christiana Bank & Trust Co.*, No. 12-623, 2012 U.S. Dist. LEXIS 136391, at *2 (D. Del. Sept. 24, 2012) (same).

Based on this rationale, district courts throughout the country regularly allow service of process by email under Fed. R. Civ. P. 4. This is particularly true in situations like this where off-the-grid defendants: (1) conduct business anonymously through sheltered websites; (2) correspond with customers primarily via email; and (3) do not disclose their true names or physical addresses. *Id.*; *see also Joe Hand Promotions, Inc. v. Carrette*, No. 12-2633, 2013 U.S. Dist. LEXIS 109731, at *5 n.9 (D. Kan. July 9, 2013) (quoting decision from the Court of Appeals for the Ninth Circuit for the proposition that service by email is acceptable when permitted by a court order); *Elcometer, Inc. v. TQC-USA, Inc.*, No. 12-14628, 2013 U.S. Dist. LEXIS 19874, at *7-8 (E.D. Mich. Feb. 14, 2013) (permitting email service on defendant in Panama under Rule 4(f)(3)); *Facebook, Inc. v. Banana Ads, LLC*, No. 11-3619, 2012 U.S. Dist. LEXIS 42160, at *4-8 (N.D.C.A. Mar. 27, 2012) (permitting email service on foreign defendants with domain names registered to physical addresses in Panama under Rule 4(f)(3)); *Craigslist, Inc. v. Troopal Strategies, Inc.*, No. 09-4741, 2010 U.S. Dist. LEXIS 144409, at *3-4 (N.D.C.A. Nov. 24, 2010) (permitting email service on defendant in Panama under Rule 4(f)(3)); *The North Face Apparel Corp., et al. v. Fujian Sharing Imp. & Exp. Ltd. Co., et al.*, Case No. 1:10-CV-01630, Dkt. No. 15 (S.D.N.Y. Mar. 2, 2010). Ample precedent therefore exists to support the relief sought herein.

Dechra is the owner of U.S. Patent No. 7,781,420 ("the '420 Patent") and the federally registered trademark Osphos®. Osphos® is the trade name of Dechra's FDA approved

Clodronate injectable product for the treatment of equine navicular syndrome (*i.e.*, podotrochlosis). Dechra manufactures, markets and sells Osphos® throughout the United States.

RHM operates the website "racehorsemeds.com" which offers for sale, and sells to customers in the United States and abroad, various veterinary pharmaceuticals and supplements. RHM actively markets and advertises its products to customers in the United States, and within this judicial district. Such advertising is promoted through RHM's website, as well as various forms of social media including Facebook and YouTube. Dkt. No. 1 at 4; Nosher Decl. Ex. 1.[2] By way of example, RHM's YouTube videos advertising its products have been viewed by thousands of viewers. *Id.*

According to its website, RHM is "a Panamanian corporation **with offices located in** Canada and **the United States**." Nosher Decl. Ex. 2 at 1 (emphasis added). **However, RHM lists no corporate address anywhere on its website or social media postings – United States or otherwise**. To the contrary, RHM actively conceals it identity and addresses, and requires that its customers contact it by **email or toll free telephone number only**. Simply put, RHM is using the Internet to operate anonymously – and outside the reach of the United States courts – to avoid detection, prevent legal service and to evade liability, all while conducting an active business selling infringing product to customers in the United States.

To be clear, RHM's primary method of communication is email. It prominently advertises its email address "info@racehorsemeds.com" throughout its webpage and social media postings. Nosher Decl. Exs. 1 and 2. Indeed, RHM expressly requires its customers to

---

[2] Dechra submits the attached Declaration of Todd M. Nosher ("Nosher Decl.") in connection with and in support of the instant Motion.

contact it through its email address for any and all issues or questions they may have.[3] For example, RHM states that "[customers] may change [their] information at any time and as often as necessary. If you need assistance or have questions about correcting information, you may contact us via e-mail at info@racehorsemeds.com" and "[t]his Privacy Policy is incorporated into and subject to the Terms of Service that you accept when ordering our Services. If you have any questions about this Privacy Policy or our privacy protection practices, please contact us at info@racehorsemeds.com."[4] Nosher Decl. Ex. 3 (emphasis added).

Dechra filed its Complaint against RHM on June 26, 2015 asserting, *inter alia*, infringement of the '420 Patent and trademark infringement, false designation, unfair competition and false advertising arising under the Federal Lanham Act, 15 U.S.C. § 1051 et seq. Dkt. No. 1.[5] That same day, Dechra sent RHM a copy of the Complaint and a Cease and Desist letter by Certified Mail to 22 West 56th Street, Suite 210, Kearny, Nebraska 66223. Nosher Decl. Ex. 4. Notably, this is the **same address that RHM listed as its return address** on a shipment of its infringing product. Nosher Decl. Ex. 5. Dechra's Certified Mail to RHM was returned as

[3] The Terms and Conditions of Defendant's website states that notice to Racehorsemeds.com should be accomplished through "commercial overnight delivery service, certified or registered mail – return receipt requested, or by hand to the person and address set forth below," but provides no address other than "RacehorseMeds.com, Panama." Nosher Decl. Ex. 2.

[4] Significantly, Defendant cites and relies on United States law and its applicable rules in the Terms and Conditions section of its website. Nosher Decl. Ex. 2 ("Restatements: The term "Restatements" shall mean Section 757 of the Restatement of Torts, Section 39 of the Restatement (Third) of Unfair Competition, Section 1 of the Uniform Trade Secrets Act and 18 U.S.C. § 1839"; "Qualified Arbitrators shall be selected by the parties in accordance with the Arbitration Rules of attorneys of our choice. Each party shall have the right of discovery as set forth in the Federal Rules of Civil Procedure. The Arbitration shall be administered by attorneys of our choice;" and "User shall not perform any act in conflict with or in violation of the export laws and regulations of Canada and the United States.").

[5] Dechra also filed a related co-pending litigation against Horsepreace.com ("HPR"), Civil Action No. 2:15-cv-09144.

undeliverable stating that "no such number" of the address existed, further evidencing Defendant's efforts to conceal its United States location. Nosher Decl. Ex. 4.

On June 26, 2015, Dechra also emailed a copy of the Complaint and its Cease and Desist letter to RHM at RHM's email address: info@racehorsemeds.com. Nosher Decl. Ex. 6. That email and the contents therein were plainly received by RHM as evidenced by RHM's subsequent actions. Indeed, prior to receiving Dechra's email, RHM sold its infringing product under the name OsteoPhos and stated on its website that OsteoPhos "has the same mechanism of action as… [Dechra's] Osphos®." Dkt. No. 1 at 5; Nosher Decl. Ex. 7. Immediately after receiving Dechra's email, RHM changed the name of its infringing product from OsteoPhos to OzPhoz Explosion and removed the language comparing its infringing product to Osphos® in a futile attempt to cure its Lanham Act violations. Nosher Decl. Ex. 8. Thus, much like its customers who communicate with RHM by email on a daily basis, Dechra successfully reached RHM via email as well.

Dechra has even sought the location of RHM's business by writing letters to RHM's website hosting company and registrant, who were unable to provide any United States address. The hosting company however did place a "Registrar-lock" on RHM's website.

It should be noted that Dechra has a growing suspicion that RHM is related to, and/or is operated in concert with HPR – the defendant in Dechra's related co-pending litigation. The Terms and Conditions of RHM's website seemingly confirm this point.

> Section 6.02 – Entire Agreement: This Agreement contains the entire understanding of the parties relating to **the RacehorseMeds.com Technology** and supersedes all previous verbal and written agreements between RacehorseMeds.com and User relating to the **HorsePreRace.com Technology**. The Policy Statement (as modified by RacehorseMeds.com from time to time) is incorporated herein by this reference and made a part of this Agreement.

Nosher Decl. Ex. 2 (emphasis added). For this reason, service on one defendant will most likely result in service on both defendants. And as explained in Dechra's contemporaneously filed motion to serve by alternative means in the Horseprerace.com litigation, evidence demonstrates that HPR has likewise received prior Dechra emails.

Dechra has exhausted its present options and email service is the only feasible alternative at this point. Dechra therefore proposes to effect service of the Complaint and Summons via email to the Defendant's "info@racehorsemeds.com" account. If any physical address in the United States is uncovered at a later date, Dechra would be willing to later attempt service via personal means. Under Dechra's proposal, Defendant will have actual notice of the Complaint and Summons through a method reasonably calculated to provide notice – a method that Dechra has already used to successfully communicate with Defendant.

## CONCLUSION

Dechra's requested relief serves the interests of justice and fairness and will not prejudice any party. Accordingly, and for the reasons set forth herein, Dechra requests that this Court enter an order granting permission it to serve the Complaint and Summons upon Defendant Racehorsemeds.com by email on or before November 27, 2015.

Dated: October 19, 2015

Respectfully submitted,
LATHROP & GAGE LLP

By: /s/ David V. Clark
David V. Clark (KS # 70014)
David R. Barnard (KS # 17955)
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
Tel: 816.292.2000 Fax: 816.292.2001
dbarnard@lathropgage.com
dclark@lathropgage.com

Frank M. Gasparo (*admitted pro hac vice*)
Todd M. Nosher (*admitted pro hac vice*)
VENABLE LLP
1270 Avenue of the Americas
New York, New York 10020
Tel: 212.307.5500 Fax: 212.307.5598
fmgasparo@venable.com
tmnosher@venable.com

*Attorneys for Plaintiffs Dechra Limited and Dechra Veterinary Products LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DECHRA LIMITED and DECHRA VETERINARY PRODUCTS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>RACEHORSEMEDS.COM<br><br>Defendant. | Civil Action No. 15-cv-9143<br><br>*DOCUMENT FILED ELECTRONICALLY* |

**DECLARATION OF TODD M. NOSHER IN SUPPORT OF DECHRA'S MOTION FOR PERMISSION TO SERVE DEFENDANT RACEHORSEMEDS.COM BY ALTERNATIVE MEANS**

I, **TODD M. NOSHER**, of full age, hereby state as follows:

1. I am an attorney at law in the State of New York and Counsel at Venable LLP.

2. I submit this Declaration in support of Plaintiffs Dechra Limited and Dechra Veterinary Products LLC's (collectively "Dechra") Motion for Permission to Serve Defendant Racehorsemeds.com ("RHM") by Alternative Means ("Motion").

3. Attached hereto as Exhibit 1 is a true and correct copy of internet screenshots that I took on October 19, 2015 of: (1) RHM's website Racehorsemeds.com at url: https://racehorsemeds.com; (2) RHM's Facebook page at url: https://www.facebook.com/racehorse.meds; and (3) RHM's YouTube Channel at url: https://www.youtube.com/channel/UC8E6_N1z77iP3QtGOfDx4Rg.

4. Attached hereto as Exhibit 2 is a true and correct copy of an internet screenshot that I took on October 19, 2015 of RHM's "Terms and Conditions" section of its website Racehorsemeds.com at url: https://racehorsemeds.com/terms-and-conditions-2/.

5. Attached hereto as Exhibit 3 is a true and correct copy of an internet screenshot that I took on October 19, 2015 of RHM's "Privacy Policy" section of its website Racehorsemeds.com at url: https://racehorsemeds.com/privacy-policy/.

6. Attached hereto as Exhibit 4 is a true and correct copy of the June 26, 2015 Cease and Desist Letter and accompanying envelope that Dechra sent by Certified Mail to RHM at 22 West 56th Street, Suite 210 Kearny, Nebraska 66223 on June 26, 2015. This Certified Mail was returned as undeliverable as "no such number" of the address existed.

7. Attached hereto as Exhibit 5 is a true and correct copy of a photograph of a package received from RHM on July 2, 2015 containing product ordered from RHM's website and listing RHM's return address as 22 West 56th Street Suite 210, Kearny Nebraska, 68847.

8. Attached hereto as Exhibit 6 is a true and correct copy of the June 26, 2015 email sent by Dechra's counsel to RHM at the email address info@racehorsemeds.com attaching a copy of the Complaint and Dechra's Cease and Desist letter.

9. Attached hereto as Exhibit 7 is a true and correct copy of an internet screenshot that I took on June 16 2015 of RHM's OsteoPhos page on its website Racehorsemeds.com at url: http://racehorsemeds.com/product/new-product-osteophos-50mgml-15ml/.

10. Attached hereto as Exhibit 8 is a true and correct copy of an internet screenshot that I took on July 6 2015 of RHM's OsteoPhos page (changed to Ozfoz Explosion after receiving Dechra's Cease and desist Letter) on its website Racehorsemeds.com at url: http://racehorsemeds.com/product/ozfoz-osphos-50mgml-15ml/.

11. Attached hereto as Exhibit 9 is the Exhibit List to this declaration.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: October 19, 2015

Todd M. Nosher

# EXHIBIT 9

All dates displayed in the report are in EST(GMT-05:00) time zone

[redacted]

## Contact

| Case Reporter | First Name | Last Name | Email Address | Phone |
|---|---|---|---|---|
| ☑ | [redacted] | [redacted] | [redacted] | [redacted] |

## Section A - About the Problem

| | |
|---|---|
| What kind of problem was it? (Check all that apply) | ☑ Were hurt or had a bad side effect (including new or worsening symptoms)<br>☑ Used a product incorrectly which could have or led to a problem<br>☐ Noticed a problem with the quality of the product<br>☐ Had problems after switching from one product maker to another maker |
| Date the problem occurred | 28-Feb-2020 |
| Serious | Yes |
| Did any of the following happen? (Check all that apply) | ☐ Hospitalization - admitted or stayed longer<br>☐ Required help to prevent permanent harm<br>☐ Disability or health problem<br>☐ Birth defect<br>☑ Life-threatening<br>☐ Death<br>☑ Other serious/important medical incident(Please Describe Below) |
| Other serious/important medical incident(Please Describe Below) | |

## 4.Tell us what happened and how it happened (Include as many details as possible FDA may reach out to you for any additional documents if necessary)

I ordered omeprazole oral paste from www.racehorsemeds.com and instead the syringe containing paste for a 30 days supply actually contained DSMO, which causes birth defects in humans and serious side affects to horses. It was mis-labled placing me and my horse at risk for life threatening injuries. The owner, [redacted] has been cited before-SHUT HIM DOWN BEFORE HE KILLS SOMEONE!!! Contact the district attorney so they can conduct a criminal investigation against him! [redacted] and I will be filing a civil Federal Lawsuit, but the FDA should be doing more to protect the public. This guy is not a vet or a legitimate pharamacy.

## Relevant Test/Laboratory Data — 1 of 1

| | | | |
|---|---|---|---|
| Test Name | | Test Date | |
| Test Result | | Test Unit | |

| | | | |
|---|---|---|---|
| Low Test Range | | High Test Range | |
| More Information Available? | | | |

## Additional Comments

| |
|---|
| |

## Section B - Product Availability

| | |
|---|---|
| Do you still have the product in case we need to evaluate it? | Yes |
| Do you have a picture of the product? (check yes if you are including a picture) | No |

## Section C - About the Products 1 of 1

| | | | |
|---|---|---|---|
| Suspect | Yes | | |
| Primary? | Yes | | |
| Type | Drug/Biologic | | |
| This report is about | Drug | | |
| Name of the product as it appears on the box, bottle, or package (Include as many names as you see) | omeprazole oral paste | | |
| Name of the company that makes (or compounds) the product | www.racehorseme ds.com | | |
| Product Type(check all that apply) | ■ Over-the-Counter<br>■ Compounded by a Pharmacy or an Outsourcing Facility<br>■ Generic<br>■ Biosimilar | | |
| Strength | | If Other | |
| NDC number | | | |
| Did the problem stop after the person reduced the dose or stopped taking or using the product? | No | | |
| Did the problem return if the person started taking or using the product again? | Doesn't Apply | | |

## Drug Therapy 1 of 1

| | | | |
|---|---|---|---|
| Expiration date | | | |
| Lot number | | | |
| Dosage Form | | | |
| Quantity | | If Other | |
| Frequency | | If Other | |
| How was it taken or used | | If Other | |
| Date the person first started taking or using the product | 01-Mar-2020 | | |

| | |
|---|---|
| Date the person stopped taking or using the product | 10-Mar-2020 |
| Give best estimate of duration | |
| Is therapy still on-going? | |

**Why was the person using the product? (such as what condition was it supposed to treat)** 1 of 1

My horse had ulcers

| | |
|---|---|
| Returned to Manufacturer On | |

## Section D - About the Medical Device

| | |
|---|---|
| Name of medical device | |
| Name of the company that makes the medical device | |

**Other identifying information (The model, catalog, lot, serial, or UDI number, and the expiration date, if you can locate them)**

| | |
|---|---|
| Model Number | |
| Catalog Number | |
| Lot Number | |
| Serial Number | |
| UDDI Number | |
| Expiration date | |
| Was someone operating the medical device when the problem occurred? | |

**For implanted medical devices ONLY (such as pacemakers, breast implants, etc.)**

| | | | |
|---|---|---|---|
| Date the implant was put in | | Date the implant was taken out (If relevant) | |

## Section E - About the Person Who Had the Problem

[redacted]

| List known medical conditions (Such as diabetes, high blood pressure, cancer, heart disease, or others) |
|---|
| |

| Please list all allergies (such as to drugs, foods, pollen or others) |
|---|
| |

| List any other important information about the person (such as smoking, pregnancy, alcohol use, etc.) |
|---|
| |

| List all current prescription medications and medical devices being used. |
|---|
| |

| List all over-the-counter medications and any vitamins, minerals, supplements, and herbal remedies being used. |
|---|
| |

| Section F - About the Person Filling Out This Form | 1 of 1 |
|---|---|
| Primary? | Yes |
| Reporter is Patient? | |
| Title | |
| Last name | [redacted] |
| Middle Name | |
| First name | [redacted] |
| Number/Street | [redacted] |
| City | [redacted] |
| State/Province | [redacted] |
| Country | [redacted] |
| ZIP or Postal code | [redacted] |
| Telephone number | [redacted] |
| Email address | [redacted] |
| Fax | |
| Reporter Organization | |

| | | | |
|---|---|---|---|
| | Department | | |
| | Reporter Speciality | | |
| | Today's date | 11-May-2020 | |
| | Did you report this problem to the company that makes the product (the manufacturer/compounder)? | Yes | |
| | If you do NOT want your identity disclosed to the manufacturer, please mark this box (Confidentiality Requested): | No | |

# EXHIBIT 10




# Click Here To Cheat? Online Peddlers Of Racehorse Snake Oil Go Largely Unchecked

by Natalie Voss | 05.25.2016 | 11:19am




A plain brown package arrived at the doorstep of Dr. Mary Scollay, equine medical director for the Kentucky Horse Racing Commission. There was no return address label. No packing slip. According to what she had read online, the small vial inside containing a dark red liquid was "a proprietary formula that is an extremely potent blood builder." It was "extremely fast acting" and "best given the day before an event." It also "would not test."

Scollay had placed the order on HorsePreRace.com at the request of an international racing authority that wanted to do some testing on the product. A little wary of putting her own name on the mailing list for a website peddling blood builders, she ordered the injectable substance under her husband's name, but was never asked to produce a veterinary license number.

If you believe everything you read on the Internet, a few clicks can take away your horse's arthritic joint pain, open his airways, increase his muscle mass, buoy his mood, and put him lengths ahead of where he might have finished without a little help. Product descriptions from online retailer RaceHorseMeds.com

boast that its wares (including the unsettlingly-named “Explosion Product Line”) “will light one up,” “are stimulants” and “will not test.” Many have instructions suggesting the products be injected several times over the course of the last 24 hours before a performance for maximum impact.




*What's in those bottles, exactly?*

Tests of these supplements performed at the request of racing commissioners or the Racing Medication and Testing Consortium reveal varying levels of truth in labeling. Some supplement bottles appear to more or less divulge what the product contains (a requirement for drugs approved by the Food and Drug Administration) while others remain as opaque as possible. One backstretch veterinarian heard the fluorescent-colored injectable liquids were usually sterile water and food coloring.

As it turns out, many of the would-be performance enhancers trend more toward snake oil than frog juice.

“When we test these, we find amino acids. We find sugar. We find preservatives. But we don't find anything that would actually have an impact on the horse,” said Dr. Dionne Benson, executive director of the RMTC.

The vast majority of the substances marketed by HorsePreRace, RacehorseMeds, and others are comprised of amino acids, according to their labels. Amino acids are naturally occurring compounds that are the most basic building blocks of the human or animal body, forming cells, tissues, and neurotransmitters, among other things. Humans and animals acquire amino acids largely from their diets. In other words, a supplement made of amino acids will do much the same thing for a horse as simply feeding him. Essential amino acids only go to work when all of them are present in the right balance, so supplementing one or two is likely ineffective. Excess amounts of one or two amino acids are released, unused, in waste.

Benson acknowledges there are naturally occurring compounds that could make a horse run faster, though these amino acid supplements are likely not going to do the trick. It's true, Benson said, that amino acids won't produce a positive test, since laboratories don't have baselines for amino acids, but that doesn't mean putting these products into horses is harmless.



**Product Description**

**SPEED EXPLOSION is a combination of amino acids that increases energy, activates pain receptors and boost mental focus. This is an excellent pre-race to get a horse to become more aggressive and also reduces "ty-up".**

**ACTIVE INGREDIENTS: L-Carnitine 200mg/ml, L-Arginine 70mg/ml, Phenylalanine 4mg/ml, L-Isoleucine 5.33mg/ml**

**DOSAGE AND ADMINISTRATION: Administer 10 - 20ml by intravenous injection 4 hours prior to event.**

**PRESENTATION: 100ml vial**

*The dosage instructions suggest the products should be given close to race time*

"First of all the question is, with any of these sites, does [the product] contain what they say it contains? And even if it contains what they say it contains, does it do what they say it does?" she asked. "And even if that's all true, is there anything else in there that we need to worry about?"

Benson and other regulators suspect the products sold on sites like RacehorseMeds and HorsePreRace are being compounded in batches. Without government oversight, however, there's no way to know the credentials of the person mixing the latest batch, or how consistently batches of the products are made. So, when it comes to identifying what's in them, an analysis run on the bottle of Blast Off Red that Scollay ordered may bear no resemblance to what's in the next shipment of the same product. There's also no way to know what contaminants or impurities may have worked their way into the solution, and there's no way to know whether manufacturers are replacing one active ingredient with a performance enhancer to produce a convincing impact.

Trainer Roy Sedlacek found this out the hard way when he was suspended five years for a positive test for a synthetic opioid. He told regulators the product he thought he purchased was ITPP, a different performance-enhancing substance that was not found. (Actual ITPP, Benson said, is extremely difficult and expensive to produce and would have run into the seven figures for an equine dose, based on costs of academic research of the drug on mice.)

"A lot of trainers, not all trainers, but a lot of trainers, have a protocol for their barn, not a protocol for a horse," said Benson. "Every horse gets these three things leading up to a race. Instead of going through and saying this horse needs this because it medically needs it, we say this horse needs it because it's going to race. And racing is not a medical condition."

*Is this even legal?*

HorsePreRace and others are careful to refer to their products as animal supplements, which is not a recognized product category by the Food and Drug Administration. Instead, the FDA has historically opted to regulate animal supplements inconsistently either as feed or as drugs, which requires examination of the labeling and marketing for each individual product. The production of either animal feed or drugs without approval from the FDA is illegal.

The FDA can object to the sale of compounded versions of prescription drugs sold by online retailers without prescriptions. In 2014, the agency issued a warning letter to Simon Jones of HorsePreRace, demanding that the website stop selling a list of so-called supplements "intended for use in the mitigation, treatment, or prevention of disease in animals, which makes them drugs." Several, including omeprazole oral paste, flunixin, and toltrazuril paste, bear identical names to prescription drugs, though no prescription was required to order them. Furthermore, the FDA charged, HorsePreRace was mislabeling its products — a tube of omeprazole tested by the agency contained just 68.1 percent of the omeprazole claimed on the tube. Mislabeling of drugs is also considered a violation of the Federal Food, Drug, and Cosmetic Act.



*The content of products sold online can vary wildly, regulators say*

Those kinds of discrepancies with would-be prescriptions aren't unusual; a study of randomly-selected compounded drugs tested by the Missouri Board of Pharmacy found that about 20 percent of the products tested contained a drastically different amount (between 0 and 450 percent) of the active ingredient from what was advertised on their packaging. A University of California-Davis study found compounded clenbuterol that contained ten times its advertised concentration. A sample of triamcinolone acetal discovered in Minnesota boasted 6 mg/ml of the active ingredient on its bottle, but turned out to contain only .00828 mg/ml.

As far as regulatory officials are concerned, possession of most of the HorsePreRace website's products, whether supplements or compounded copies of prescription drugs, would constitute a violation of racing rules in many states. Most jurisdictions prohibit any non-veterinarian to possess hypodermic needles or injectable products on the grounds. Many of the supplements on RacehorseMeds and HorsePreRace instruct users to give injections within hours of a performance, which is also illegal.

Duncan Patterson, chairman of the Delaware Thoroughbred Commission and of Racing Commissioners International's drug testing standards and practices committee, said that in his experience, most of these products are found in the possession of trainers rather than veterinarians. In some states, such as Indiana, a veterinarian's possession of a substance that does not meet certain labeling requirements (such as expiration date, patient name, and duration of treatment) could constitute a violation, too. Patterson said Delaware officials will open mail addressed to trainers, looking for prohibited substances, and perform surprise searches of offices and veterinary trucks. Discoveries are relatively rare.

*Who's behind the keyboard?*

If questionable contents and high-risk possession aren't worrisome enough for potential customers of web-based pharmacies, a quick search into the companies' identities should be. Attempts to name the proprietors of HorsePreRace and RacehorseMeds (their terms of service agreements imply they are or once were different tails in the same viper's nest, although one associate denied any connection) lead the searcher down an online rabbit hole with more questions than answers.

The FDA warning letter to HorsePreRace was issued to a Mr. Simon Jones of 635 N. Orange Avenue in Orlando, Fla. The invalid mailing address would appear to occupy part of the parking lot of the Orlando Sentinel, where newsroom reporters told the Paulick Report they had never heard of the business. One of many phone numbers associated with HorsePreRace was at one time used in a telephone scam run by an

entity called Centex Resources SA, in which a caller tried to convince people to buy into oil and gas investments but never delivered. Centex was alleged to be based out of Panama, where HorsePreRace and RacehorseMeds claim their websites are hosted, but the government of Panama said Centex was not authorized to operate there, and in fact, had no offices in Panama. Instead, the mailing address for HorsePreRace appears to be one obtained through a virtual office address system. (IP addresses for both sites suggest they originate in the United States).

Further examination into the ownership of RacehorseMeds leads to the physical address for the South Florida Trotting Center, where domain owner Frank Stefanizzi can be reached. Stefanizzi has spent his career in the harness racing industry as a sometimes-trainer/owner, sometimes-groom, according to his license applications. Requests by Stefanizzi for licensure in New York and Florida in 2010 were denied when he falsified information on his application by failing to disclose a lengthy history of arrests. When reached by the Paulick Report, Stefanizzi said he owns 99 percent of RacehorseMeds, which he founded with a pharmacist, and that the company is based in the United States. When queried about the origin of the products, the interview was discontinued due to a “poor connection.”

The other identity associated with RacehorseMeds is Patrick Zarrelli, also known by his chosen moniker “Kid Chronic.” In addition to his duties as a website builder and public relations manager, Zarrelli is a self-declared reputation manager via his company Dependable Website Management and admitted to doing search engine optimization work for RacehorseMeds.

“Consumers and those using search engines rarely look past the first page of search results,” reads Zarrelli's sales pitch for his reputation management services. “In web marketing, it is considered a fantastic success to appear on the first page of Google. The second page of results and beyond may as well not even exist. If your company's results are strewn with poor reviews, you can fight back by placing numbers of positive reviews all over the front page.

“Combative management takes steps to fight back against poor reviews by flooding the internet with positive reviews of your company. Even though negative statements cannot be erased, we can make them almost impossible to find, buried under glowing positivity and reviews that will bring customers flocking to you. We'll push those negative results straight from the first page of search results into places that no one will ever look.”

Email queries and phone messages to both companies about whether a veterinary license was required to order products or querying the 'Ask a Veterinarian' section of RacehorseMeds were unreturned.

It would seem the owners of HorsePreRace are hoping their identities and qualifications for selling equine drugs will also be nearly impossible to find.

*How do authorities deal with this?*

The advantage of remaining anonymous, as the proprietors of websites like these must realize, is that it's harder for over-taxed state and federal agencies to catch drug and “supplement” sellers red-handed. Officials with the Kentucky Board of Pharmacy expressed concern that the two websites were marketing prescription drugs to state residents while neither was registered with LegitScript, an online pharmacy verification service approved by the National Association of Boards of Pharmacy. (Online retailers selling prescriptions across state lines are usually required to be registered with the states in which they do business, and those registrations may involve inspection requirements.) However, the boards' authority can only go so far.

"Since the Board is only an administrative agency, we could assist the Attorney General's office," said Steve Hart, spokesman for the Kentucky Board of Pharmacy. "This should be investigated as a criminal case by statute."

In cases like these, Hart said, authorities need access to forensic computer experts to unmask, and then charge, proprietors with the sale of unauthorized prescription drugs.

"We found that these pharmacies can be literally anywhere," said Hart, who noted that Caribbean and Asian countries are common hosts.

As for the "supplements" sold by HorsePreRace and others, the FDA acknowledged in a veterinarian newsletter that a lot of products run afoul of the letter of the law but aren't likely to be checked.

"Most of these types of products on the market would be considered unapproved and unsafe food additives or new animal drugs based on current intended uses. While these products are technically in violation of the law, they are of low enforcement priority except for when public or animal health concerns arise," read a regulatory update on animal dietary supplements published in a 2002 FDA newsletter.

These days, the agency acknowledges it has no over-arching policy on how to handle substances sold as illegal drugs.

"FDA action on unapproved drugs or illegal drugs is taken on a case-by-case basis," said FDA spokesman Jason Strachman Miller. "Enforcement action may include, among other things, seizure of violative products and injunction and/or criminal prosecution against those marketing violative products."

Even when the FDA did take action against HorsePreRace in 2014 for its sale of omeprazole, flunixin, and other drugs sold without prescriptions, little appeared to change. The warning letters issued by the agency demanded the company notify the FDA within 15 days about its plans to bring its products into compliance. One year later, an FDA spokesperson told the Paulick Report there had been no follow-up communication from either side at that point. Strachman Miller said that the FDA does not comment on the existence or nonexistence of ongoing investigations, including any possible follow-up from the FDA to HorsePreRace.

The U.S. Anti-Doping Agency has dealt with similar so-called supplements alleging performance-enhancing powers in human sport. USADA provides educational materials urging athletes to consult with dietitians or trainers before starting the use of a supplement, and maintains a list of "high risk" substances that contain prohibited substances. The agency also works with the federal government to identify products that could cause problems.

"We have a joint testing program with the Uniformed Services University (Department of Defense) and together we select products that we receive questions about from either military personnel or athletes and if we suspect them to contain prohibited substances, we test them. If they're found to contain these substances, we then add them to our high risk list," said Dr. Amy Eichner, special advisor on drugs and substances for USADA. "We share any and all information with our federal partners."

When it comes to racing regulators, the prospect of wrangling state boards, law enforcement, attorneys, and the FDA to stop these products at their source seems far-fetched. One regulator said repeated attempts to alert the state board and FDA about new products masquerading as performance enhancing supplements were met with disinterest. Others said they left such coordination to the RMTC and are instead focused on using the tools that are available to them: penalties for possession, and keeping veterinarians out of stalls on race day. Kentucky's racing commission reported a noticeable improvement

in trace amounts of substances, both identifiable and unidentifiable, after enacting its third-party Lasix administration rule, suggesting the regulation may have cut down on the use of products like Blast Off Extreme on race day.

"I think that the pre-racing of horses on race day is one of racing's dirty little secrets that goes on unabated in a large number of jurisdictions," said Joe Gorajec, former executive director of the Indiana Horse Racing Commission. "I think that the third-party Lasix rule is a good starting point … the penalty is half the equation. If a significant penalty isn't there, people are going to take a shot."




*New to the Paulick Report? Click here to sign up for our daily email newsletter to keep up on this and other stories happening in the Thoroughbred industry.*

Copyright © 2021 Paulick Report.

This entry was posted in The Paddock and tagged cheating in horse racing, dionne benson, drugs in horse racing, FDA, fda approval, Frank Stefanizzi, Horse Racing, horse racing regulation, HorsePreRace, ITPP, Joe Gorajec, Mary Scollay, Natalie Voss, online drug sites, Patrick Zarelli, Paulick Report Investigations, RacehorseMeds, roy sedlacek, thoroughbred racing, usada by Natalie Voss. Bookmark the permalink.

**Please read our Commenting Policies**




Instagram @paulickreport



# EXHIBIT 11

racehorsemeds owner

About 2,580 results (0.33 seconds)

[redacted]

Further examination into the ownership of RacehorseMeds leads to the physical address for the South Florida Trotting Center, where domain **owner** [redacted] can be reached.

May 25, 2016

https://www.paulickreport.com › Archives

Online Peddlers Of Racehorse Snake Oil Go Largely Unchecked

About featured snippets • Feedback

https://equimanagement.com › News › Equine Industry

Owner Of Illegal Racehorse Doping ... - EquiManagement

Apr 26, 2021 — ... websites designed to appeal to racehorse trainers and **owners**, including, among others, "horseprerace.com" and "**racehorsemeds**.com.".

https://www.fda.gov › press-releases › owner-illegal-rac...

Owner Of Illegal Racehorse Doping Websites Pleads Guilty In ...

Apr 23, 2021 — ... websites designed to appeal to racehorse trainers and **owners**, including, among others, "horseprerace.com" and "**racehorsemeds**.com.".

https://racehorsemedshop.com

Race Horse Meds Shop: Vet pharmacy - Horse Medications ...

At **Race Horse Meds** Shop, we're committed to serving pet **owners** and veterinarians from all over the globe. We channel our efforts into contributing to the ...

https://racehorsemedshop.com › founder-in-horses

Founder In Horses - RACE HORSE MEDS SHOP

Sep 15, 2017 — What is **Founder**?: **Founder** occurs due to the lack of blood flow in the laminae which produces inflammation in the hoof. As time goes by, ...

https://www.dallasnews.com › News › Crime

Pharmacy owner whose drugs led to doped racehorses ...

Jul 5, 2019 — Joe Landers turned his ifelong love for horses into a lucrative business, first by breeding them on his Texas ranch and then running a ...

Missing: ~~racehorsemeds~~ | Must include: racehorsemeds

https://insight.rpxcorp.com › litigation_documents PDF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ...

for its Complaint against Defendant **Racehorsemeds**.com ("RHM") hereby ... Plaintiff Dechra Limited is the lawful **owner** by assignment of all rights, title and.

https://www.facebook.com › ... › Racehorse Meds › Posts

Racehorse Meds - Posts | Facebook

Greyhound news out of the UK as new **owners** Henlow Racing took control of the Towcester Racecourse last October. They have confirmed that they will be opening ...

Rating: 3.5 · 24 votes

https://www.washingtonpost.com › sports › 2020/03/09

Feds charge horse racing trainers veterinarians over The

Mar 9, 2020 — ... Scott Mangini of operating an "on ine marketplace" at which racehorse **owners** and trainers could obtain misbranded and adulterated PEDs.

https://forum.chronofhorse.com › best-equine-meds-scam

"Best Equine Meds" SCAM! - Horse Care - Chronicle Forums

Nov 19, 2020 — I used to purchase Pentosan from **racehorsemeds** (similar to horsepreface) ... dealing with a company whose **owner** was indicted for drug fraud.

## Related earche

**performance-enhancing drugs in horse racing**

**race horses for sale**

**toltrazuril**

**thoroughbred**

**my racehorse**

**race horse movies**

1 2 3 4 5 6 7 8 9 10 Next

**New York** - Based on your past activity - Update location

Help Send feedback Privacy Terms

# EXHIBIT 12

# Filed Under Seal

# EXHIBIT 13

# Filed Under Seal

# EXHIBIT 14

# Filed Under Seal

# EXHIBIT 15

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Food and Drug Administration
Florida District
555 Winderley Place, Suite 200
Maitland, Florida 32751

Telephone: 407-475-4700
FAX: 407-475-4770

**VIA UPS NEXT DAY AIR**
**w/ DELIVERY CONFIRMATION**

**WARNING LETTER**

**FLA-15-04**

October 29, 2014

Dr. Scott Mangini
Horse Gold, Inc.
[redacted]

Dear Dr. Mangini:

This letter concerns the marketing of the product GastroMax3 by your firm, Horse Gold, Inc. The U.S. Food and Drug Administration (FDA) reviewed your website at the internet address horsegold.com, where you promote and sell this product.

We have determined that GastroMax3 is intended for use in the mitigation, treatment, or prevention of disease in animals, which makes it a drug under section 201(g)(1)(B) of the Federal Food, Drug, and Cosmetic Act (the FD&C Act) [21 U.S.C. § 321(g)(1)(B)]. Under the FD&C Act, drugs intended for use in animals require an approved new animal drug application unless they are generally recognized as safe and effective. As discussed below, we have determined that your drug is not generally recognized as safe and effective, and is therefore unsafe under section 512(a)(1) of the FD&C Act [21 U.S.C. § 360b(a)], and adulterated under section 501(a)(5) of the FD&C Act [21 U.S.C. § 351(a)(5)], because you are marketing it without an approved new animal drug application.

Statements on your website and product labeling that show the product is intended for use in the mitigation, treatment or prevention of disease in animals include, but are not limited to, the following:

- "The ultimate in equine ulcer care"
- "Gastromax3 is a special combination of three ingredients that work together and can give your equine the prevention it needs against gastric ulcers."

Because GastroMax3 is intended to mitigate, treat, or prevent disease in animals, it is a drug within the meaning of section 201(g)(1)(B) of the FD&C Act [21 U.S.C. § 321(g)(1)(B)]. Further, this product is a new animal drug, as defined by section 201(v) of the FD&C Act [21 U.S.C. § 321(v)], because it is not generally recognized among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling.

To be legally marketed, a new animal drug must have an approved new animal drug application, conditionally approved new animal drug application, or index listing under sections 512, 571, and 572 of the FD&C Act [21 U.S.C. §§ 360b, 360ccc, and 360ccc-1]. GastroMax3 is not approved or index listed by the FDA, and therefore the product is considered unsafe under section 512(a)(1) of the FD&C Act [21 U.S.C. § 360b(a)], and adulterated under section 501(a)(5) of the FD&C Act [21 U.S.C. § 351(a)(5)]. Introduction of an adulterated drug into interstate commerce is prohibited under section 301(a) of the FD&C Act [21 U.S.C. § 331(a)].

This letter is not intended to be an all-inclusive review of your products and their promotion. It is your responsibility to ensure that all of your products are in compliance with the Act and its implementing regulations. Failure to promptly correct the violations specified above may result in enforcement action without further notice. Enforcement action may include seizure of violative products and/or injunction against the manufacturers and distributors of violative products.

You should notify this office, in writing, within fifteen (15) working days of the receipt of this letter of the steps you have taken to bring your firm into compliance with the law. Your response should include any documentation necessary to show that correction has been achieved. If corrective action cannot be completed within fifteen (15) working days, state the reason for the delay and the date by which the corrections will be completed. Include copies of any available documentation demonstrating that corrections have been made.

Please direct your response to the U.S. Food and Drug Administration, Salvatore N. Randazzo, Compliance Office, 555 Winderley Place, Suite 200, Maitland, FL 32751.

Sincerely,

Susan M. Turcovski
Director, Florida District

CC: Dr. Scott Mangini
[redacted]

Distribution

bcc: HFV-230 (Vet Medicine via CMS)
HFR-SE1 (B. Ward-Groves by email)
HFI-35 (redacted copy)
HFR-SE230 (FEI No. 3010538265)
HFR-SE240/SNR Chron/LGL JKT/WL File

CMS No.: 437815

Center initiated: CVM JBray 10/29/14
Final: sje 10/29/14

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Food and Drug Administration
Florida District
555 Winderley Place, Suite 200
Maitland, Florida 32751

Telephone: 407-475-4700
FAX: 407-475-4770

**VIA UPS NEXT DAY AIR**
**w/ DELIVERY CONFIRMATION**

**WARNING LETTER**

**FLA-15-03**

October 29, 2014

[redacted]
Horse PreRace
[redacted]
info@horseprerace.com

Dear Mr. [redacted]

This letter concerns your marketing of several products including, but not limited to, Omeprazole Oral Paste, Omeprazole/Ranitidine Oral Paste, Gastrotec, Gastromax3, Flunixin, Synedem, Toltrazuril Paste, and Super Tie Up on your website at the internet address horseprerace.com. The U.S. Food and Drug Administration (FDA) reviewed your website, where you promote and sell these products, and obtained and tested samples of your Omeprazole Oral Paste product.

We have determined that the above referenced products are intended for use in the mitigation, treatment, or prevention of disease in animals, which makes them drugs under section 201(g)(1)(B) of the Federal Food, Drug, and Cosmetic Act (the FD&C Act) [21 U.S.C. § 321(g)(1)(B)]. Under the FD&C Act, drugs intended for use in animals require an approved new animal drug application unless they are generally recognized as safe and effective. As discussed below, we have determined that these drugs are not generally recognized as safe and effective, and are therefore unsafe under section 512(a)(1) of the FD&C Act [21 U.S.C. § 360b(a)], and adulterated under section 501(a)(5) of the FD&C Act [21 U.S.C. § 351(a)(5)], because you are marketing them without approved new animal drug applications. In addition, the drug Omeprazole Oral Paste is adulterated under section 501(c) of the FD&C Act [21 U.S.C. § 351(c)], as testing of the drug revealed that its strength differs from the strength stated on the label.

Statements on your website and product labeling that show these products are intended for use in the mitigation, treatment or prevention of disease in animals include, but are not limited to, the following:

Omeprazole Oral Paste

- "INDICATIONS- Ulcers, poor condition, dull coat, loss of appetite"
- "CATEGORY- Stomach care, equine ulcers, EGUS"

Omeprazole/Ranitidine Oral Paste

- "INDICATIONS- Ulcers, poor condition, dull coat, loss of appetite"
- "CATEGORY- Stomach care, equine ulcers, EGUS"

Gastrotec

- "The newest innovation in the battle against equine ulcers."

Gastromax3

- "… formulated for one of the most prevalent problems in the equine industry. For those who don't know, the prevalence of gastric ulceration in Thoroughbreds and Standardbreds in racing varies from 70 to 94 percent."

Flunixin

- "… recommended for the alleviation of inflammation and pain associated with musculoskeletal disorders in the horse, dogs and camels."
- "Recommended for the alleviation of visceral pain associated with colic in the horse."

Synedem

- "Indications: In all species: Pulmonary edema, pulmonary congestion, ascites, renal edema, pregnancy edema, cardiac edema, hepatic edema."

Toltrazuril Paste

- "… represents a new standard in coccidiosis control in Race Horses, Camels, Pigeons, Greyhounds & Alpacas."

Super Tie Up

- "INDICATIONS- Vasodilator to improve blood flow and minimize tying-up, fatigue and muscle damage."
- "Horses : Rhabdomyolysis, azoturia, tying up, exertional myopathy syndrome…"

The above referenced products are only a sampling of the violative products you are currently marketing. Similarly, the above referenced claims are only a sampling of statements that demonstrate the intended uses of your products.

Because the above referenced products are intended to mitigate, treat, or prevent disease in animals, they are drugs within the meaning of section 201(g)(1)(B) of the FD&C Act [21 U.S.C. § 321(g)(1)(B)]. Further, these products are new animal drugs, as defined by section 201(v) of the FD&C Act [21 U.S.C. § 321(v)], because they are not generally recognized among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling.

To be legally marketed, a new animal drug must have an approved new animal drug application, conditionally approved new animal drug application, or index listing under sections 512, 571, and 572 of the FD&C Act [21 U.S.C. §§ 360b, 360ccc, and 360ccc-1]. The above referenced products are not approved or index listed by the FDA, and therefore the products are considered unsafe under section 512(a)(1) of the FD&C Act [21 U.S.C. § 360b(a)], and adulterated under section 501(a)(5) of the FD&C Act [21 U.S.C. § 351(a)(5)]. Introduction of an adulterated drug into interstate commerce is prohibited under section 301(a) of the FD&C Act [21 U.S.C. § 331(a)].

In addition, testing by FDA of samples of the drug Omeprazole Oral Paste revealed that the amount of active ingredient (omeprazole) in the drug did not correspond with the amount represented on the labeling. Specifically, the drug was found to be sub-potent at 68.1% of the label claim for potency. The product is therefore adulterated under section 501(c) of the FD&C Act [21 U.S.C. § 351(c)], in that its strength differs from that which it purports or is represented to possess.

This letter is not intended to be an all-inclusive review of your products and their promotion. It is your responsibility to ensure that all of your products are in compliance with the Act and its implementing regulations. Failure to promptly correct the violations specified above may result in enforcement action without further notice. Enforcement action may include seizure of violative products and/or injunction against the manufacturers and distributors of violative products.

You should notify this office, in writing, within fifteen (15) working days of the receipt of this letter of the steps you have taken to bring your firm into compliance with the law. Your response should include any documentation necessary to show that correction has been achieved. If corrective action cannot be completed within fifteen (15) working days, state the reason for the delay and the date by which the corrections will be completed. Include copies of any available documentation demonstrating that corrections have been made.

Please direct your response to the U.S. Food and Drug Administration, Salvatore N. Randazzo, Compliance Office, 555 Winderley Place, Suite 200, Maitland, FL 32751.

Sincerely,

Susan M. Turcovski

Susan M. Turcovski
Director, Florida District

CC: [redacted]
Avenida Perez Chitre Republic de Panama
0601-00395 Panama

[redacted]

Distribution

bcc: HFV-230 (Vet Medicine via CMS)
HFR-SE1 (B. Ward-Groves by email)
HFI-35 (redacted copy)
HFR-SE230 (FEI No. 3010539184)
HFR-SE240/SNR Chron/LGL JKT/WL File

CMS No.: 437811

Center initiated: CVM JBray 10/29/14
Final: sje 10/29/14

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Food and Drug Administration
Florida District
555 Winderley Place, Suite 200
Maitland, Florida 32751

Telephone: 407-475-4700
FAX: 407-475-4770

**VIA UPS NEXT DAY AIR**
**w/ DELIVERY CONFIRMATION**

**WARNING LETTER**

**FLA-15-05**

October 29, 2014

[redacted]
Tri-Star Equine Marketing, LLC
[redacted]

Dear [redacted]

This letter concerns the marketing of the product Gastrotec by your firm, Tri-Star Equine Marketing, LLC. The U.S. Food and Drug Administration (FDA) reviewed your website at the internet address tristarequine.com and other websites where Gastrotec is promoted and sold including, but not limited to, ergogeniclabs.com and horseprerace.com.

We have determined that Gastrotec is intended for use in the mitigation, treatment, or prevention of disease in animals, which makes it a drug under section 201(g)(1)(B) of the Federal Food, Drug, and Cosmetic Act (the FD&C Act) [21 U.S.C. § 321(g)(1)(B)]. Under the FD&C Act, drugs intended for use in animals require an approved new animal drug application unless they are generally recognized as safe and effective. As discussed below, we have determined that your drug is not generally recognized as safe and effective, and is therefore unsafe under section 512(a)(1) of the FD&C Act [21 U.S.C. § 360b(a)], and adulterated under section 501(a)(5) of the FD&C Act [21 U.S.C. § 351(a)(5)], because you are marketing it without an approved new animal drug application.

Statements on your website and product labeling that show the product is intended for use in the mitigation, treatment or prevention of disease in animals include, but are not limited to, the following:

- "For the care of gastric and colonic ulcers in horses"
- "Gastrotec is the first product to conquer gastric ulcers in horses while also reaching the hind gut and treating the "colonic" ulcers ..."

Because Gastrotec is intended to mitigate, treat, or prevent disease in animals, it is a drug within the meaning of section 201(g)(1)(B) of the FD&C Act [21 U.S.C. § 321(g)(1)(B)]. Further, this product is a new animal drug, as defined by section 201(v) of the FD&C Act [21 U.S.C. § 321(v)], because it is not generally recognized among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling.

To be legally marketed, a new animal drug must have an approved new animal drug application, conditionally approved new animal drug application, or index listing under sections 512, 571, and 572 of the FD&C Act [21 U.S.C. §§ 360b, 360ccc, and 360ccc-1]. Gastrotec is not approved or index listed by the FDA, and therefore the product is considered unsafe under section 512(a)(1) of the FD&C Act [21 U.S.C. § 360b(a)], and adulterated under section 501(a)(5) of the FD&C Act [21 U.S.C. § 351(a)(5)]. Introduction of an adulterated drug into interstate commerce is prohibited under section 301(a) of the FD&C Act [21 U.S.C. § 331(a)].

This letter is not intended to be an all-inclusive review of your products and their promotion. It is your responsibility to ensure that all of your products are in compliance with the Act and its implementing regulations. Failure to promptly correct the violations specified above may result in enforcement action without further notice. Enforcement action may include seizure of violative products and/or injunction against the manufacturers and distributors of violative products.

You should notify this office, in writing, within fifteen (15) working days of the receipt of this letter of the steps you have taken to bring your firm into compliance with the law. Your response should include any documentation necessary to show that correction has been achieved. If corrective action cannot be completed within fifteen (15) working days, state the reason for the delay and the date by which the corrections will be completed. Include copies of any available documentation demonstrating that corrections have been made.

Please direct your response to the U.S. Food and Drug Administration, Salvatore N. Randazzo, Compliance Office, 555 Winderley Place, Suite 200, Maitland, FL 32751.

Sincerely,

Susan M. Turcovski

Susan M. Turcovski
Director, Florida District

CC: Dr. Scott Mangini
Ergogenic Labs, LLC
[redacted]

Dr. Scott Mangini
[redacted]

# EXHIBIT 16


Contact Us | Racehorse Meds
https://racehorsemeds.com/contact-us/
Terms and Conditions Shipping and Returns Privacy Policy RacehorseMeds@ProtonMail.ch Select Language
0 Items
RACEHORSE MEDS.COM
Home Specials Shop by Category My Account About Us FAQs Race Tracks
CONTACT US
Contact Us
Racehorse Meds Customer Service: 1-800-291-0567
Racehorse Meds Email: RacehorseMeds@ProtonMail.ch
Hot Selling Products!


FAQs | Racehorse Meds
https://racehorsemeds.com/faqs/
Terms and Conditions Shipping and Returns Privacy Policy RacehorseMeds@ProtonMail.ch Select Language
0 Items
RACEHORSE MEDS.COM
Home Specials Shop by Category My Account About Us FAQs Race Tracks
FREQUENTLY ASKED QUESTIONS
To save our customer's time and also have the ability to keep our prices at wholesale to the public, we have developed the most FREQUENTLY ASKED QUESTIONS (FAQ's) with ANSWERS.
PLEASE NOTE: Our 800 number is ONLY for placing orders. The service members that are taking orders are simply that – Order Takers. They will not be able to respond to other questions.
How do I place an order?
The easiest and fastest way to order is directly at RacehorseMeds.com. If you have issues placing an order online, please call 1.800.291.0567.
How long will it take to receive my order?
If your order is placed by noon PST, the delivery time is as follows: For Canada and The United States it is 3-5 business days. For all other countries, it is 5-8 business days.

FAQs | Racehorse Meds

https://racehorsemeds.com/faqs/

Terms and Conditions Shipping and Returns Privacy Policy RacehorseMeds@ProtonMail.ch Select Language 0 Items

RACEHORSE MEDS.COM Home Specials Shop by Category My Account About Us FAQs Race Tracks

If your order is placed by noon PST, the delivery time is as follows: For Canada and The United States it is 3-5 business days. For all other countries, it is 5-8 business days.

Can I receive tracking for my order?

All of our tracking is done internally, which saves us money and we pass the savings onto you. If your Canada/U.S. order hasn't arrived in 7 days or international order hasn't arrived within 12-14 days, please email our customer service email directly at cs.racehorsemeds@protonmail.ch and will only respond to questions not listed in the FAQ's.

Where are you located?

Our main office is in Richmond, B.C. Canada

How much of "this product" should I administer?

Most products have the dosage and administration listed on the bottle and/or our website. Our listed dosages are based on 1000 – 1200 lb. (450-500 kg) horses. For products that do not list the dosage/administration or for smaller animals, you will need to ask your veterinarian.

What are the ingredients in "this product"?

Most of our products explain exactly what is in them. Proprietary products that do not list the ingredients are legal ingredients that will not test.

FAQs | Racehorse Meds

https://racehorsemeds.com/faqs/

Terms and Conditions Shipping and Returns Privacy Policy RacehorseMeds@ProtonMail.ch Select Language 0 Items

RACEHORSE MEDS.COM Home Specials Shop by Category My Account About Us FAQs Race Tracks

What are the ingredients in "this product"?

Most of our products explain exactly what is in them. Proprietary products that do not list the ingredients are legal ingredients that will not test.

What if I receive a broken or defective bottle(s)?

We pride ourselves on keeping our customers happy. Simply take a picture of the product(s) and packaging and email the photo(s) along with your order number to cs.racehorsemeds@protonmail.ch and we will replace it at no cost to you, including shipping.

What if I have a product or products backordered?

We will ship out your order and send you a backorder email and or a letter in your box that explains what is backordered and the expected date of delivery.

How can I get overnight shipping?

When placing your order, please request overnight shipping in the customer notes. You will then be charged a separate charge for the overnight service, less any shipping charges that you have previously paid for in your order. Some remote areas do not have the ability to receive overnight orders. If that is the case, a customer service representative will contact you with other options.



FAQs | Racehorse Meds

https://racehorsemeds.com/faqs/

Terms and Conditions Shipping and Returns Privacy Policy RacehorseMeds@ProtonMail.ch Select Language 0 Items

Home Specials Shop by Category My Account About Us FAQs Race Tracks

What if I have a product or products backordered?

We will ship out your order and send you a backorder email and or a letter in your box that explains what is backordered and the expected date of delivery.

How can I get overnight shipping?

When placing your order, please request overnight shipping in the customer notes. You will then be charged a separate charge for the overnight service, less any shipping charges that you have previously paid for in your order. Some remote areas do not have the ability to receive overnight orders. If that is the case, a customer service representative will contact you with other options.

**REMINDER:** Any emails sent to cs.racehorsemeds@protonmail.ch that are already answered in the FAQ's or are listed on the website will not be answered. This cuts down our costs and the savings is passed on to you.

Hot Selling Products!

Sale!

