**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 8, 2021

**VIA ECF & E-MAIL**

Hon. J. Paul Oetken
United States Courthouse
40 Foley Square
New York, New York 10007

Re: United States v. Scott Mangini, 20 Cr. 162 (JPO)

Dear Judge Oetken:

The Government writes briefly in response to Scott Mangini's supplemental sentencing submission dated September 8, 2021 (the "Mangini Letter"), which continues the themes of Mangini's original sentencing submission. The Government does not respond here to every point in the Mangini Letter, but submits the following for the Court's consideration. The Mangini Letter refers to sales numbers without reference to the data from which those numbers were compiled, and continues to assert that Mangini's racehorse drug business that specifically advertised itself as catering to the enhancement of horses' performance was not peddling performance enhancing drugs. The Government's September 3, 2021, sentencing submission (the "Government Sentencing Letter"), appended webpages for certain, though not all, of Mangini's drugs as Exhibits 2, 3, and 5A. With this submission, the Government attaches the following (certain of which are submitted under seal in light of the personal identifying information contained therein):

1. Exhibit A: RacehorseMeds.com webpage for Arsenocyl 100ml Ferrocyle, an "organic arsenic, iron and copper supplement" described as useful in treating of "anemia," *i.e.*, in increasing red blood cell count and oxygenation. *See also* Assoc. of Racing Commissioners International, Uniform Classification Guidelines for Foreign Substances and Recommended Penalties Model Rule, Jan. 2020 (V.14.1) ("ARCI Model Rules"), at 6 (defining, as Class 1 restricted substances, "all erythropoietin stimulating substances or their analogues"), *available at* https://www.arci.com/wp-content/uploads/2020/01/ARCI-CLASSIFICATION-PROGRAM-v14.1.pdf.

2. Exhibit B: RacehorseMeds label image file, retrieved from computers recovered at the company's worksite, for the drug "Ostarine MK-2866 Oral Solution." Ostarine is promoted on the label as follows: "Ostarine MK-2866 is in the class of Selective Androgen Receptor Modulators or SARMS. SARMS offer the benefits of traditional Anabolic Androgenic Steroids such as testosterone, including increased muscle mass, fat loss, and bone density." The label further warned customers: "Ostarine has a 24 hour half life."

3. Exhibit C: Invoices recovered from RacehorseMeds worksite reflecting the purchase of multiple component substances from a China-based manufacturer. These invoices reflect the purchase of components apparently used in various of Mangini's drugs, but include Ostarine (at pages 2, 21, 24, 30, 35, 36, 48, 60 (referred to as "MK-2866").[1]

4. Exhibit D: Additional invoices reflecting the same, at pages 14 and 32).

5. Exhibits E and F (each submitted under seal): PayPal records for RaceHorseMeds. The Government does not contend that these records are complete accountings of the sales by Mangini and his coconspirators. However, they do reflect at least a limited set of sales of performance enhancing products, including:

    a. Ostarine, at Exhibit E, Sheet "All Transactions," Column X, Lines 1232, 1784, 2570, 2625, 2884, 2972, 3264, 3283, 3813, 4054, 4318, 4572, 4585, 4827, 5331, 5738, 7482, 7711, 8221, 8741, 9118, 9390, and dozens of additional entries.

    b. Arsenocyl, at Exhibit E, Sheet "All Transactions," Column X, Lines 358, 490, 577, 589, 1047, 2658, 2664, 3652, 4264, 4909, 4961, 5008, 5025, 5652, 5856, 7385, 7841, 8001, and dozens of additional entries.

6. Exhibit G: Formulas for various drugs, compelled by subpoena from Pegasis Investment Group, the entity through which Mangini and Garofalo held their interest in RacehorseMeds. These include:

    a. Page 2: "RBC" (presumably "red blood cell"), including the component nickel, which, like cobalt, is a substance intended as a "blood builder," *i.e.*, an erythropoietin stimulating substance.

    b. Page 21: "Arsenocyl – Jurosenic," including a note of "caution" for the employees of the unregistered, unregulated drug company when using the sodium arsanilate that this drug included.

    c. Page 35: "Blood Building Explosion," including cobalt among its ingredients. *See also id.* at 48, 50, 63.

    d. Page 108: "Ostarine Oral Solution," noting that "[s]yringe goes with order."

Finally, Mangini's September 8 Letter makes a facile comparison to human dietary supplements sold by GNC. Each of the products cited by Mangini are consumed orally, as the FDA requires of dietary supplements (none are sold, for example, with a syringe included), each appears to list the actual ingredients on its labeling, and where GNC includes a reference to "banned substances" they state explicitly that the product is "BANNED SUBSTANCE FREE." *See* Mangini Letter at 4 n.18 (linking to the product page for "Unbreakable Performance Pre-

[1] Page citations refer to the Adobe software pagination of each document cited herein.

Workout"). Indeed, Mangini's citation to GNC's discussion of banned substances is instructive – when a company would like to indicate to its clients that a product does not contain a banned substance, that company can easily do so by noting that the substance is "BANNED SUBSTANCE FREE." Mangini, by contrast, was not interested in avoiding the inclusion of prohibited substances in his products, he simply wanted his clients to know that they would not be caught using his drugs, that is, his drugs "will not test."

Mangini asserts, despite the statements of the company that he owned and the nature of the drugs that he created and sold, that the Government has not proven by a preponderance of the evidence that Mangini sold "unsafe, performance enhancing drugs." Mangini Letter at 1. Of course, the documents submitted to the Court and unchallenged in their authenticity by Mangini destroy his self-serving arguments, but, in any event, *there has been no evidentiary hearing in this case*. The presentation of Mangini's company's documents, including those cited here, and Mangini's own plea agreement, should foreclose the need for a *Fatico* hearing. However, should the Court schedule a hearing, the Government would seek to present additional evidence relating to Mangini's business, his dealings with Scott Robinson and others, and his own proffer statements, required to address disputed facts material to the Court's sentencing determination.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: ____________________
Sarah Mortazavi
Andrew C. Adams
Anden Chow
Assistant United States Attorneys

cc: William Harrington, Esq. (via ECF)
Jeffrey E. Marcus, Esq. (via ECF)