**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 20, 2022

**VIA ECF**
The Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: *United States v. Scott Mangini*, 20 Cr. 162 (JPO)**

Dear Judge Oetken:

The Government writes in response to defendant Scott Mangini's *pro se* letter-motion (the "Motion") asking that the Court issue a recommendation to the Bureau of Prisons ("BOP") that the defendant be designated to a halfway house or residential reentry center ("RRC") for the final 12 months of his sentence. *See* Def. Mot. (ECF No. 145).[1] The defendant was sentenced to an 18-month term of imprisonment on September 13, 2021, and ordered to self-surrender to a BOP facility on January 10, 2022. (ECF No. 121). The defendant has consequently served less than one-third of his original sentence. The defendant is currently scheduled to be released from BOP custody on or about April 4, 2023. As the defendant notes in his submission, the defendant's designation to a BOP facility is a matter that falls squarely under the purview of the BOP, though, of course, the Court may make recommendations to the BOP regarding a defendant's designation, and often does so at sentencing. *See id.* ¶¶ 4, 5. 14; *see also* 18 U.S.C. § 3621.[2] The Government opposes Mangini's request and asks the Court to deny the Motion for the reasons explained below.

As an initial matter, Mangini argues that the request he seeks is not a modification of his sentence, but merely a change to the BOP facility recommended by the Court at sentencing. *See* Mot. ¶ 5; *see also* 18 U.S.C. § 3621(b)(4)(B). It is self-evident, however, that this Court's issuance of a recommendation, *8 months after sentencing*, that Mangini spend 12 of 18 months in an RRC, would be a meaningful and substantive amendment of the Court's original sentence. Mangini's contemplated recommendation is unlike a request for transfer to a different region due to changed family circumstances: the defendant is seeking a transfer to a different type of correctional institution precisely because it lessens the burden imposed by the Court's original sentence. Mangini has failed to elucidate a justification for his request, other than listing vague and

[1] Based on the anticipated date of the defendant's release from custody, Mangini is anticipated to spend an additional 11 months in custody.

[2] In fact, this Court recommended that Mangini be designated to Federal Prison Camp ("FPC") Pensacola at sentencing, upon the defendant's request. *See* Mangini Sent. Tr. at 45:23-46:5. Mangini now, apparently dissatisfied with the designation, seeks transfer to an RRC instead.

unsupported assertions regarding the resources available in an RRC as compared to a correctional facility, and his likelihood of recidivism. *See, e.g.*, Mot. ¶ 9 (claiming that the defendant could only obtain "promotional vocational prospects" at an RRC).[3] Mangini's stated reasons for seeking the recommendation only underscore his desire to reduce the burden imposed by the Court's original sentence. As such, this Court ought to apply the factors set forth in Section 3582(c) and deny the defendant's Motion for failing to exhaust administrative remedies, and, separately, for failing to carry his burden of proving that a sentencing modification is warranted. 18 U.S.C. § 3582(c)(1)(A) (This Court "may reduce [a] term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Broadus*, No. 17 Cr. 787 (RJS), 2020 WL 3001040, at *2 (S.D.N.Y. June 4, 2020) (defendant "has not carried his heavy burden of demonstrating that extraordinary and compelling reasons merit a significant reduction in his sentence"); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426-27 (S. D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.").

Alternatively, and at the very least, this Court ought to apply *some* criteria to evaluate the defendant's request. Absent articulable criteria, defendants requesting a judicial recommendation for transfer to an RRC – unlike all other defendants seeking post-sentencing relief – would be subject to no restrictions on their transfer request. Transfer to an RRC from a BOP penal institution undoubtedly confers on Mangini a significant benefit and changes the nature and severity of the 18-month term of imprisonment originally imposed by this Court. In light of the nature of the request, some objective factors should be imposed to ensure there is parity between Mangini and all other defendants seeking relief from a sentence of imprisonment, who are otherwise required to make some evidentiary showing, and/or to first pursue administrative remedies. *See, e.g.*, 18 U.S.C. § 3582(c) (listing requirements for compassionate release, including finding "extraordinary and compelling reasons" and evaluating the applicable Section 3553(a) factors); 18 U.S.C. § 3632(d)(4)(A)-(C) (earned time credit for early release preconditioned on completion of eligible "evidence-based recidivism reduction programming or productive activities" and exhaustion of administrative remedies); 18 U.S.C. § 3624(c)(2), 34 U.S.C. § 60541 (conferring statutory authority on the BOP to release inmates to home confinement subject to a number of preconditions); Fed. R. Crim. P. 35(b) (setting forth the requirements for reducing a sentence on the basis of "substantial assistance").

---

[3] Mangini further claims in his Motion that "programming in the BOP since 2019 has been wholly inconsistent and incomplete," a dubious claim given that: (1) the defendant does not specify which correctional facilities he is referencing; (2) the defendant does not list the nature of the "programming" that was previously available, but is no longer offered; and, most significantly, (3) the defendant was only incarcerated in January 2022, and thus has no personal knowledge of the state of the BOP's "programming" prior to his surrender date. His unsupported and self-serving allegations as to the limitations of FPC Pensacola's "programming" lack merit.

The Government respectfully submits that this Court ought to at least consider the Section 3553(a) factors in determining whether to issue a recommendation that Mangini be transferred to an RRC. Application of the Section 3553(a) factors militates against a recommendation that the defendant be transferred to an RRC, for all the reasons set forth in the Government's sentencing submissions. *See* Gov. Sent. Subm. (ECF No. 115); Gov. Suppl. Sent. Subm. (ECF No. 117). First, the defendant's transfer to an RRC would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. As argued in the Government's submissions, Mangini has failed to grapple with the seriousness or scope of his conduct and its potential harm, having presented at sentencing a skewed and self-serving representation of his culpability and role in the offense conduct. *See* Gov. Sent. Subm. at 4-8. Mangini adamantly refused to admit that he had conspired with others to distribute performance-enhancing drugs ("PEDs"), begrudgingly conceding only that he had distributed a misbranded and adulterated medications that were necessary to address medical issues, despite reams of evidence to the contrary. *See. e.g.*, Def. Sent. Subm. at 3 (ECF No. 114) ("Mr. Mangini never conspired to sell illegal performance enhancing drugs. The products he made and sold were allowable under horse racing rules because they are used to address routine health problems suffered by animals, including horses."); *see generally* Def. Suppl. Sent. Subm. (ECF No. 116) (arguing that the Government "cannot prove Mr. Mangini conspired to sell PEDs"). The Government argued in its submission that Mangini's fixation on the semantics of his offense conduct reflected a failure to accept responsibility for his crimes and thus counseled in favor of a significant term of imprisonment. *See* Gov. Sent. Subm. at 4-8. Indeed, in Mangini's sentencing submission, supplemental sentencing submission, and at sentencing, Mangini devoted more time and energy to contesting the Government's references to PEDs than in expressing true remorse for his criminal conduct. It is thus perplexing—and, simply, wrong—for the defendant to claim in his instant motion that he has "expressed exceptional remorse and contrition regarding his commission of his offenses." Mot. ¶ 13. Mangini has done no such thing. In numerous submissions, Mangini contested facts that were plain on their face; more to the point, his litigation of terminology far eclipsed his acceptance of responsibility. This Court should give little credence to Mangini's claimed contrition.

Second, rejecting the defendant's Motion is necessary to afford adequate specific and general deterrence. With respect to specific deterrence, and as argued in the Government's initial sentencing submission, the defendant ignored repeated warnings regarding the risks, consequences – and illegality – of his criminal activities. *See* Gov. Sent. Subm. at 11-13. This demonstrates a persistent and repeated desire to violate the law, even when the illegality of his actions were plain. Troublingly, the defendant repeatedly states in his Motion that his requested transfer to an RRC is necessary to avoid his own risk of recidivism. Mot. ¶ 7 (citing RRC placement guidance citing recidivism as a factor for RRC placement); *id.* ¶ 10 ("The purpose of the Second Chance Act of 2007 is to improve the reintegration of offenders back into their respective communities and to reduce recidivism"); *id.* ¶ 11 (RRC placement "would allow Mr. Mangini to better address the underlying impetus that led to commission of his instant offenses"); *id.* ¶ 12 (transfer to an RRC "would allow Mr. Mangini the opportunity to address and correct his remaining risk of recidivism"). Implicit in these warnings is the suggestion that *absent* a transfer to an RRC, Mangini will repeat the same criminal conduct that led to the charged offense. The defendant's subjective opinions regarding his risk of re-offending are hardly an appropriate metric. To the contrary, it is troubling for the defendant to imply that RRC placement is the only way to ensure he will lead a law-abiding life. The defendant is fully capable of conforming his conduct to the law after his

release from FPC Pensacola. RRC placement is hardly necessary for Mangini, or, indeed, for any defendant, to pursue lawful employment upon release from incarceration. Mangini's suggestion otherwise should be wholly rejected. With respect to general deterrence, it is important for this Court to send the message that those who engage in the distribution of unsafe adulterated and misbranded drugs will face significant consequences for their actions. *See* Mangini Sent. Tr. at 42:6-11 ("Among the purposes of the sentencing that must be considered, and I think is relevant here, is . . . deterrence, particularly, general deterrence. Those are important considerations, especially given that the business scheme here was designed to evade the law."). As this Court noted at sentencing, "sending a message that this sort of crime will be taken seriously is important." Mangini Sent. Tr. at 42:19-20. Recommending Mangini's transfer to an RRC would undermine that message, and signal that such conduct will be faced with leniency. This is particularly so because, as stated above, Mangini has failed to demonstrate any basis for the requested transfer beyond his general preference.

Finally, issuing the defendant's requested recommendation would promote unwarranted sentencing disparities between the defendant and others indicted as part of the Government's investigation, including disparities between Mangini and co-defendant Scott Robinson, who likewise received an 18-month term of imprisonment. *See* 18 U.S.C. § 3553(a)(6) ("The court . . . shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). This Court noted at sentencing that Mangini's 18-month sentence was informed by the Court's intent to impose "a sentence that is the same as the one [the Court] sentenced Mr. Robinson to . . . ." Mangini Sent. Tr. at 43:1-4. Granting Mangini's request for a transfer would undermine the Court's intent at sentencing to align the terms of imprisonment served by Mangini and Robinson as a result of their crimes.[4]

In sum, whatever criteria the Court ultimately applies in evaluating the defendant's Motion, the request lacks merit and should be denied. The Government remains available should the Court have any questions.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: __/s/_Sarah Mortazavi_______________
Sarah Mortazavi
Anden Chow
Assistant United States Attorneys

---

[4] Moreover, in the related case before the Honorable Mary Kay Vyskocil, *United States v. Navarro et al.*, 20 Cr. 160 (MKV), convicted defendants have been sentenced to terms of imprisonment ranging from thirty months to sixty months' imprisonment, with no provision that a portion of such prison terms be served in an RRC. Granting Mangini's request would likewise create disparity between Mangini's sentence and that of other defendants "with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).